Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| EL PUEBLO DE PUERTO RICO<br><br>Apelada<br><br>v.<br><br>JONATHAN SOLÍS PACHECO<br><br>Apelante | TA2025AP00455 | APELACIÓN<br>Procedente del Tribunal de Primera Instancia, Sala de SAN JUAN<br><br>Caso Núm.:<br>K LA2024G0036<br>K LA2024G0037<br><br>Sobre:<br>Art. 6.02 Ley de Armas<br>Art. 6.09 Ley de Armas |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de junio de 2026.

El 14 de octubre de 2025, el Sr. Jonathan Solís Pachecho (señor Solís o apelante) sometió ante este Tribunal de Apelaciones una *Apelación criminal por derecho propio y en forma pauperis* mediante la cual impugnó la *Sentencia* dictada en la causa de epígrafe el 29 de septiembre de 2025, por el Tribunal de Primera Instancia, Sala de San Juan (TPI o foro primario). Por virtud del aludido dictamen, el foro primario lo encontró culpable de infracción al Artículo 6.02 y Artículo 6.09 de la Ley 168 del 11 de diciembre de 2019, mejor conocida como la Ley de Armas de Puerto Rico de 2020. Como consecuencia de ello, le impuso una pena de reclusión de 39 años de cárcel.

Estudiado el legajo apelativo, particularmente la transcripción del juicio celebrado contra el apelante y la evidencia admitida por el TPI durante el mismo, resolvemos confirmar el dictamen apelado.

-I-

El 14 de febrero de 2024, el Ministerio Público presentó sendas acusaciones contra el apelante por infracción de los artículos 6.02 y 6.09 de la Ley de Armas. Allí, y para cada uno de estos, le imputó lo siguiente:

Acusación por Art. 6.02:

Jonathan Miguel Solís Pacheco c/p Gago en concierto y común acuerdo con Elvin Y Millet Torres; c/p flaco, allí y entonces en fecha y hora antes mencionada, en el estacionamiento Burlington Plaza Las Américas, San Juan, ilegal, a propósito, y con conocimiento, **vendió y distribuyó a un agente encubierto un arma de fuego, tipo rifle, esto sin estar debidamente autorizado en Ley para ello.**

El arma de fuego en cuestión se describe como un rifle, marca Spikes Tactical, modelo SL 15, calibre, multi, color negro, número de serie SAR69826, cargada con 50 municiones calibre .223, la cual es capaz de disparar y causar grave daño corporal.

Acusación por Art. 6.09:

Jonathan Miguel Solís Pacheco/p gago en concierto y común acuerdo con Elvin Y Millet Torres c/p Flaco, allí y entonces en fecha y hora antes mencionada, en el estacionamiento Burlington Plaza Las Américas, San Juan, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de San Juan, ilegal, a propósito y con conocimiento, **PORTABA sin autorización de esta un arma larga semiautomática, tipo RIFLE la cual es capaz de disparar.**

El arma de fuego en cuestión se describe como un rifle, marca Spikes Tactical, modelo SL 15, calibre multi, color negro, número de serie SAR69826, cargada con 50 municiones calibre .223, la cual es capaz de disparar y causar grave daño corporal.

Tras los trámites de rigor, el juicio por jurado se celebró los días 9 y 10 de abril y 14 y 16 de julio de 2025. Durante el mismo, y como parte de la prueba de cargo, se presentó el testimonio de los siguientes testigos: Agente Joel Ríos González (Agte. Ríos González), Agente Víctor Serrano Rodríguez (Agte. Serrano Rodríguez), Sargento William Lugo (Sgto. Lugo), Agente Roberto Lozada Ortiz (Agte. Lozada Ortiz), Agente Gloribí Doval Fernández (Agte. Doval) y Agente Félix Pacheco Burgos (Agte. Pachecho Burgos). Además, fueron admitidos los siguientes documentos:

Exhibit 1- formulario de Labor Realizada

Exhibit 2- PPR134.4, Recibo de Evidencia Digital

Exhibit 3- Valor Hash

Exhibit 4- DVD con grabación video

Exhibit 5- Rifle automático núm. de Serie SAR69826

Exhibit 6 A, B y C- magacines simples

Exhibit 7- abastecedor de rifle tipo tambor

Exhibit 8. Fotografía de rifle automático núm. de serie SAR68826

Exhibit 9- Fotografía de las 50 municiones

Exhibit 10- Sobre con 50 municiones

Exhibit 11- PPR Señalamiento e Identificación

Exhibit 12- Informe Confidencia Sobre Infracción

Exhibit 13- Copia certificada de Certificación Registro Electrónico de Licencia y Armas

Exhibit 14- Certificación Prueba de Funcionamiento

Desfilada la prueba y luego de deliberar, el jurado encontró al apelante culpable de las infracciones imputadas. Así hecho, y celebrada la vista para dictar sentencia, el foro primario le impuso una pena de 15 años de cárcel por la infracción del Art. 6.02 y 24 años de cárcel por el Art. 6.09 de la Ley de Armas, dictaminándose que estas penas se cumplirían de forma consecutiva.

Como ya mencionamos, inconforme con ello el apelante instó el recurso de epígrafe y señaló la comisión de los siguientes errores:

Erró el Honorable Jurado al encontrar culpable al apelante, Jonathan Solís Pacheco, en virtud de una prueba que no destruyó la presunción de inocencia ni estableció la culpabilidad más allá de toda duda razonable, en violación del Artículo II, Sección 7 de la Constitución del Estado Libre Asociado de Puerto Rico y de la Sexta Enmienda de la Constitución de los Estados Unidos de América.

Erró el foro sentenciador al imponer las penas de los Artículos 6.02 y 6.09 de la Ley de Armas de Puerto Rico de 2020 de manera consecutiva, cuando: (a) el Artículo 6.09, como norma especial (*lex specialis*), absorbe al Artículo 6.02 bajo el principio de concurso de leyes; y (b) en la alternativa, la imposición acumulada de penas viola la garantía constitucional contra la doble exposición penal y la prohibición de penas crueles e inusitadas, al amparo del Artículo II, Secciones 11 y 12 de la Constitución de Puerto Rico y de las Enmiendas V y VIII de la Constitución de los Estados Unidos.

Atendido el recurso, el 22 de octubre de 2025, emitimos *Resolución* mediante la cual ordenamos a la Secretaría del TPI a remitirnos por correo

electrónico las sentencias dictadas en los casos de epígrafe, así como el enlace con la regrabación de todas las vistas de juicio celebradas para que se preparara la transcripción de oficio. Tras los trámites de rigor relacionados a la asignación de un abogado de oficio para el apelante, así como de la preparación y estipulación de la transcripción de oficio, el 26 de mayo del año en curso, el señor Solís sometió el *Alegato del apelante*. Por su parte, el 5 de junio de 2026, el Ministerio Público, representado por la Oficina del Procurador General de Puerto Rico, presentó el *Alegato del Pueblo de Puerto Rico*. Así pues, con el beneficio de ambas comparecencias, damos por sometido el asunto y procedemos a resolver, no sin antes exponer la normativa vigente y aplicable a las controversias planteadas.

-II-

A.

La Constitución del Estado Libre Asociado de Puerto Rico establece que "[e]n todos los procesos criminales el acusado disfrutará del derecho […] a gozar de la presunción de inocencia."[1] Para rebatir dicha presunción, la evidencia que el Ministerio Público presente debe satisfacer el estándar probatorio máximo en nuestro ordenamiento jurídico y demostrar la comisión de los hechos imputados más allá de duda razonable. *Íd.*, a la pág. 907, al citar la Regla 110(F) de las Reglas de Evidencia, 32 LPRA Ap. VI, y casos allí citados. Ello no supone la necesidad u obligación de probar la comisión del delito con certeza matemática. *Pueblo v. Toro Martínez*, 200 DPR 834, 856 (2018). Lo que se exige, como imperativo constitucional, es una "prueba satisfactoria y suficiente en derecho […] que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido." *Pueblo v. Negrón Ramírez, supra*, a la pág. 908 y casos allí citados. La misma, debe probar todos los elementos del delito y la

---

[1] *Pueblo v. Negrón Ramírez*, 213 DPR 895 (2024) al citar el Art. II, Sec. 11, LPRA, Tomo 1, ed. 2023, pág. 359 de la Constitución de Puerto Rico.

conexión del imputado con el referido delito, por lo que la carencia de evidencia sobre alguno de los elementos del delito implicaría el incumplimiento por parte del Estado con su carga probatoria y supondría la absolución del acusado respecto al delito imputado. *Íd.*

La determinación de si se satisfizo el correspondiente estándar probatorio y, por ende, si se probó la culpabilidad del acusado más allá de duda razonable, corresponde inicialmente al juzgador de los hechos; quien vendrá llamado a evaluar y aquilatar la evidencia presentada ante sí para determinar cuáles hechos han quedado probados.[2] En lo concerniente, es menester señalar que en aquellos casos de naturaleza criminal con derecho a juicio por Jurado, dicha función le corresponde al Jurado, el cual está constitucionalmente encomendado a recibir la prueba, adjudicar los hechos de acuerdo con esta y aplicar el derecho según le instruya el tribunal. *Pueblo v. Negrón Ramírez, supra,* págs. 908-909.

De acuerdo con lo hasta aquí consignado, si en virtud de la prueba presentada por el Ministerio Público el juzgador de los hechos estima que se han probado más allá de duda razonable todos los elementos del delito y la conexión de éstos con el acusado, la obligación del juzgador es encontrar al acusado culpable del delito imputado. Ahora, el acusado que así fuere convicto tendrá derecho de apelar su condena ante un tribunal de superior jerarquía. Dicho foro, podrá pasar juicio sobre la determinación de culpabilidad hecha. *Íd.,* pág. 909, al citar la Regla 193 de Procedimiento Criminal, 34 LPRA Ap. II.

Ahora bien, es norma hartamente conocida en nuestro ordenamiento jurídico que, tal facultad no constituye una carta blanca para que los tribunales apelativos revoquemos, sin más, los fallos o veredictos emitidos por un tribunal de instancia. Ello así, pues impera una norma general de deferencia a la apreciación de la prueba y las determinaciones de hechos

---

[2] Véase, Regla 110 de Evidencia, *supra.*

que realiza el foro juzgador. Sólo en constadas excepciones un tribunal apelativo podrá intervenir con estas y sustituir el criterio del foro primario por el suyo. *Íd.*

La deferencia mencionada emana del hecho de que los juzgadores de instancia se encuentran en una mejor posición para evaluar, aquilatar y adjudicar la prueba presentada. *Pueblo v. Toro Martínez, supra,* a la págs. 857-858. Después de todo, son los juzgadores de hechos los que pueden oír y apreciar la forma de declarar de los testigos, así como su comportamiento. *Íd.,* pág. 858. Cabe destacar también, que la norma de deferencia apelativa aplica con igual rigor cuando lo que se tiene ante consideración del foro revisor es un veredicto de culpabilidad emitido por un Jurado. *Pueblo v. Negrón Ramírez, supra,* a la pág. 914, al mencionar a *Pueblo v. Colón, Castillo,* 140 DPR 564, 581 (1996).

*B.*

La Ley de Armas se aprobó con el objetivo de salvaguardar y proteger los derechos de los ciudadanos americanos residentes en Puerto Rico dejándose claro que el portar y poseer armas en esta jurisdicción es un derecho fundamental e individual como en los Estados Unidos.[3] Este estatuto establece los requisitos que deberá cumplir toda persona que requiera la expedición de una licencia de armas a su favor, la información que la solicitud presentada a estos efectos debe contener, qué documentos deberán acompañarla y regula la radicación de las solicitudes de licencia de armas.[4] Además, establece que para poder adquirir, comprar, transportar, vender, donar, traspasar, tener, poseer, custodiar, portar, usar y conducir armas, armas de fuego, municiones y cualquier otro accesorio permitido por el estatuto y en todo lugar sujeto a la jurisdicción del Gobierno de Puerto Rico se requerirá una licencia de armas vigente.[5]

---

[3] Véase Exposición de Motivos de la Ley de Armas.
[4] Véase Art. 2.02(a), (b), (c) y (d) de la Ley de Armas.
[5] *Íd.*, inciso (e).

El Capítulo VI de la Ley de Armas establece un sinnúmero de delitos, las penas a cumplirse de incurrirse en la conducta delictiva allí establecida. También regula el agravamiento de estas. En cuanto a esto último, el Artículo 6.01 de la Ley de Armas dispone como a continuación transcribimos:

Toda persona que resulte convicta de alguna de las disposiciones de esta Ley, y que dicha convicción esté asociada y sea coetánea a otra convicción de cualquiera de las disposiciones de la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como la "Ley de Sustancias Controladas de Puerto Rico", con excepción del Artículo 404 de la misma, o de la Ley Núm. 33 de 13 de julio de 1978, según enmendada, conocida como la "Ley contra el Crimen Organizado y Lavado de Dinero del Estado Libre Asociado de Puerto Rico", será sancionada con el doble de la pena provista en esta Ley. **Todas las penas de reclusión que se impongan bajo esta Ley serán cumplidas consecutivamente entre sí y consecutivamente con las impuestas bajo cualquier otra ley.** Además, si la persona hubiere sido convicta anteriormente por cualquier violación a esta Ley o por cualquiera de los delitos especificados en ésta o usare un arma en la comisión de cualquier delito y como resultado de tal violación, alguna persona sufriera daño físico o mental, la pena establecida para el delito se duplicará. Toda violación a esta Ley en una zona escolar o universitaria conllevará el doble de la pena.

Todas las penas de reclusión que se impongan bajo esta Ley podrán ser consideradas para la libertad bajo palabra por la Junta de Libertad bajo Palabra al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto.

En lo concerniente al caso de autos, los Artículos 6.02 y 6.09 de la Ley de Armas por los que el apelante fue encontrado culpable leen como a continuación transcribimos:

Artículo 6.02. — **Fabricación, Importación, Venta y Distribución de Armas de Fuego**. (25 LPRA sección 466a)

**Se necesitará una licencia expedida conforme a los requisitos exigidos por esta Ley para ofrecer, vender o tener para la venta o traspasar cualquier arma de fuego, municiones o aquella parte o pieza de un arma de fuego donde el fabricante de la misma coloca el número de serie del arma.** Se necesitará una licencia de armero para, además de hacer todo lo antes indicado, fabricar, alquilar o importar cualquier arma de fuego, municiones o aquella parte o pieza de un arma de fuego donde el fabricante de la misma coloca el número de serie del arma. Toda infracción a este Artículo constituirá delito grave y será sancionada con pena de reclusión por un término fijo de quince (15) años, sin derecho a sentencia suspendida, o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o a cualquier alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un

máximo de veinticinco (25) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de diez (10) años.

Artículo 6.09. — **Portación, Posesión o Uso Ilegal de Armas Largas Semiautomáticas, Automáticas o Escopeta de Cañón Cortado.** (25 LPRA sección 466h)

Toda persona que **porte, posea o use sin autorización de esta Ley un arma larga semiautomática, una ametralladora, carabina, rifle, así como cualquier modificación de estas o cualquiera otra arma que pueda ser disparada automáticamente o escopeta de cañón cortado a menos de dieciocho (18) pulgadas, y que pueda causar grave daño corporal, o cualquier pieza o artefacto que convierte en arma automática cualquier arma de fuego, incurrirá en delito grave**, y convicta que fuere será sancionada con pena de reclusión por un término fijo de veinticuatro (24) años, sin derecho a sentencia suspendida, o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o a cualquier alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de treinta y seis (36) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de dieciocho (18) años. No constituirá delito la posesión o uso de estas armas en el cumplimiento del deber por los agentes del Negociado de la Policía o por otros agentes del orden público debidamente autorizados. Tampoco constituirá delito la posesión o uso de estas armas según permitido en otros Artículos de esta Ley.

(Énfasis suplido)

### C.

Existen ocasiones en las cuales una misma persona comete, mediante uno o más actos, varias ofensas que son valoradas y juzgadas conjuntamente en el mismo procedimiento judicial. Tales situaciones constituyen el concurso de delitos. Dicha figura, atiende cómo debe determinarse cuál es la pena que mejor refleja la gravedad del hecho y la culpabilidad de la persona. *Pueblo v. DiCristina Rexach*, 204 DPR 779 (2020). La misma, puede ocurrir en tres supuestos: el concurso ideal, el concurso medial y el concurso real. *Íd.*

El concurso ideal se configura cuando un solo hecho o unidad de conducta infringe varios tipos delictivos que tutelan bienes jurídicos distintos. En estos casos, se acusa a la persona imputada por más de un delito para valorar adecuadamente sus actos. No obstante, dado que las diversas violaciones son producto de una misma conducta, solamente se

sanciona al imputado con la pena del delito más grave. *Id.*, al citar a *Pueblo v. Álvarez Vargas,* 173 DPR 587, 592-593 (2008).

El concurso medial, contempla aquellas instancias en las cuales una persona comete más de un delito, pero todas las circunstancias apuntan a que uno de los delitos fue el medio necesario para cometer el otro. Si bien en estos casos existe una pluralidad de hechos, los mismos se atienden según las normas del concurso ideal. *Pueblo v. DiCristina Rexach*, a la pág. 790 y casos allí citados.

Por último, el concurso real contempla aquellas situaciones en las que varias unidades de conducta violan la misma ley o normas penales distintas. Entiéndase, este supuesto cobija las instancias en las que existen varios actos y varios delitos. *Íd.*

El Código Penal de 2012 contiene en su artículo 71[6] las disposiciones relacionadas al concurso de delitos y cómo se impondrán las penas. Así, este establece lo siguiente:

> (a) Concurso ideal y medial de delitos: Cuando sean aplicables a un hecho dos o más disposiciones penales, cada una de las cuales valore aspectos diferentes del hecho, o cuando uno de éstos es medio necesario para realizar el otro, se condenará por todos los delitos concurrentes, pero sólo se impondrá la pena del delito más grave.
>
> (b) Concurso real de delitos: Cuando alguien haya realizado varios delitos que sean juzgados simultáneamente, cada uno de los cuales conlleva su propia pena, se le sentenciará a una pena agregada, que se determinará como sigue:
>
> > (1) Cuando uno de los delitos conlleve pena de reclusión de noventa y nueve (99) años, ésta absorberá las demás.
> >
> > (2) Cuando más de uno de los delitos conlleve reclusión por noventa y nueve (99) años, se impondrá además una pena agregada del veinte (20) por ciento por cada víctima.
> >
> > (3) En los demás casos, se impondrá una pena para cada delito y se sumarán, no pudiendo exceder la pena agregada del veinte (20) por ciento de la pena para el delito más grave.

Por su parte, en su artículo 72, el Código Penal instituye lo concerniente a los efectos del concurso. Específicamente, dispone que "[e]n

---

[6] 33 LPRA Sec. 5104.

los casos provistos por el Artículo anterior, se juzgarán por todos los delitos concurrentes. La absolución o sentencia bajo alguno de ellos impedirá todo procedimiento judicial por el mismo hecho, bajo cualquiera de las demás. Un acto criminal no deja de ser punible como delito por ser también punible como desacato."[7]

-III-

Como arriba mencionamos, en el presente caso, el señor Solís fue encontrado culpable de todos los delitos que le fueron imputados mediante un veredicto unánime del Jurado. Entiéndase, el Jurado encontró probado más allá de duda razonable que en la hora y fecha de los hechos imputados, portó un arma larga semiautomática tipo rifle capaz de disparar sin poseer licencia para ello, así como que vendió y distribuyó a un agente encubierto un arma de fuego, tipo rifle sin autorización legal.

En su recurso, el señor Solís afirma que el veredicto de culpabilidad emitido en su contra fue errado, pues la prueba desfilada durante el juicio en su contra no rebatió la presunción de inocencia que le cobija, ni estableció más allá de toda duda razonable su culpabilidad. Específicamente, alega que el video tomado sobre la transacción con el agente encubierto admitido como Exhibit 4 durante el juicio no corrobora ningún elemento esencial del delito pues en el mismo no se le observa sosteniendo, entregando ni manipulando el rifle, los cargadores, municiones u objetos relacionados con los cargos. Además, destaca que: el agente que filmó la escena- el agente Ríos, admitió durante su testimonio que el video no refleja que hubiera entregado algo al agente encubierto; que el agente Serrano aceptó al declarar que en la grabación no tiene en ningún momento el rifle en sus manos; y que el agente Pacheco reconoció que ninguno de los objetos que se alega vendió y poseyó son visibles durante el video.

---

[7] 33 LPRA Sec. 5105.

De igual manera, afirmativamente señala que la grabación revela que permaneció en el asiento del pasajero del vehículo en el que arribó al lugar de los hechos mientras el agente encubierto y su acompañante interactuaban y llevaban a cabo el intercambio. Así, expone que "[u]n vendedor no permanece sentado mientras otro realiza la entrega en su nombre.", por lo que el video admitido en evidencia, no solo desmiente la teoría del Ministerio Público, sino que es consistente con su inocencia.

De otra parte, en su discusión, el señor Solís señala que la prueba del Ministerio Público padece de contradicciones, inconsistencias y omisiones significativas. Así pues, indica que el Agte. Serrano declaró en sala que fue él quien le ofreció directamente el arma para la venta, más en la declaración jurada que suscribió cercano a los hechos consignó que este tenía un amigo que poseía el arma para vender; quien el propio agente reconoció era el dueño real del rifle, quien conducía el vehículo, buscó el bulto y realizó la entrega del arma al agente encubierto. Igualmente, señala que el Agte. Ríos manifestó que luego de la transacción se dirigieron al Parque Central para retratar la evidencia adquirida, mientras que el Agte. Pacheco manifestó que el lugar de encuentro fue el estacionamiento multi pisos de Plaza Las América, socavándose la confiabilidad de la cadena de custodia. Además, durante su testimonio, el Agte. Ríos manifestó que el bulto que observó durante la transacción era de color negro, pero al ser confrontado con las fotografías tomadas, aceptó que este era azul.

Luego, expone que, aunque al declarar el Agte. Serrano manifestó que el mensaje dejado por el apelante fue un mensaje de voz mediante la aplicación de WhatsApp, en su declaración jurada no hace referencia al mismo, mientras que el Agte. Pacheco alegó que las comunicaciones eran llamadas telefónicas. De igual manera, reclama que el formulario de labor realizada cumplimentado por el Agte. Ríos no recoge: (1) la hora de inicio ni de culminación del operativo; (2) el nombre del lugar donde se tomaron

las fotografías del arma; (3) la cantidad de fotografías tomadas; ni (4) el traslado desde Burlington hasta el Parque Central ni el tiempo de ese recorrido.

De la misma manera, en contra de la determinación de culpabilidad, el señor Solís destaca que, conforme el testimonio de los testigos revela, nunca tuvo el control del rifle, los cargadores o las municiones. Al mismo tiempo, señala que los delitos imputados exigen un acto afirmativo de posesión, venta, traspaso o uso. Específicamente, en su defensa, indica que "la mera recepción de dinero, en ausencia de prueba de que […] tenía control sobre el arma, no satisface esos elementos más allá de duda razonable."

En cambio, el Ministerio Público arguye que la culpabilidad del señor Solís sí fue demostrada más allá de duda razonable. Establece que conforme dispone el Artículo 6.02 de la Ley de Armas, para establecer su infracción estaba obligado a probar que el señor Solís vendió, en concierto y común acuerdo con el señor Millet, un arma de fuego, municiones o piezas de un arma de fuego y que no poseía una licencia para ello. El Estado sostiene que así hizo. A tales efectos, indica que del testimonio de agente encubierto surgió lo siguiente:

1. que el 14 de febrero de 2022 el apelante ofreció- mediante un mensaje enviado por WhatsApp- venderle un rifle con 50 municiones, un cargador tipo tambor y 3 cargadores sencillos por $3,3000;

2. que este le indicó que la transacción ocurriría el 21 de febrero de 2022 en el estacionamiento de Burlington de Plaza las Américas;

3. que el día programado para ello el agente encubierto llegó al estacionamiento primero y alrededor de las 10:45 llegó el apelante en un Mitsubishi conducido por el señor Millet Torres se estacionó junto a él y se saludaron;

4. que el señor Millet Torres fue al baúl, saco un bulto azul y se lo entregó;

5. que dentro de dicho bulto se encontraba el rifle, las municiones y los cargadores;

6. que luego de verificar el contenido del bulto fue a entregar el dinero al señor Millet Torres, pero este le indicó que se lo entregara al apelante, quien al dársele el dinero lo cogió y decidió no contarlo;

7. que luego de la transacción, se encontró con el Agte. Pacheco y el Agte. Ríos, quienes vieron que el bulto contenía lo mencionado en el inciso 5 y así también lo declararon.

El Ministerio Público sostiene que lo declarado por el agente encubierto coincide con el video tomado por el Agte. Ríos y admitido en evidencia, así como de las fotos. También, afirma que la evidencia delictiva vendida por el señor Solís junto al señor Millet Torres fue admitida como prueba durante el juicio y corroborada por los testigos. Añade que, durante la vista en su fondo se sometió prueba documental y testifical que demostró que el señor Solís no tenía licencia alguna de armas para la fecha de los hechos.

Si bien admite que el video tomado y admitido en evidencia no muestra el interior del bulto mientras ocurría la transacción, expone que este corrobora los hechos narrados por el Agte. Serrano, a quien el Jurado le otorgó credibilidad. A su vez, señala que las inconsistencias destacadas por el apelante son insustanciales y no causan que los testimonios sean increíbles. Igualmente expone que las contradicciones mencionadas por el señor Solís no derrotan el testimonio del agente encubierto en cuanto a que fue él quien ofreció el rifle en venta, puso el precio, coordinó la transacción y en común acuerdo con el señor Millet Torres, arribó al estacionamiento de Burlington en un mismo vehículo con un arma que no estaba registrada a nombre de ninguno de ellos.

De igual manera, el Estado establece que para poder probar la infracción al Artículo 6.09 de la Ley de Armas imputada al señor Solís, durante el juicio debió probar que el apelante portó, sin autorización de ley, un rifle que puede causar grave daño corporal. Manifiesta que sobre cada uno de estos elementos presentó tanto el testimonio del Agte. Serrano sobre la transacción, como un video y fotos que evidenciaron que señor Solís, en

concierto y común acuerdo con el señor Millet Torres, portó y transportó el rifle objeto de venta hasta el estacionamiento de Burlington en Plaza las Américas donde lo vendieron. También, que mediante el Exhibit 13, se demostró que para la fecha de los hechos el apelante no tenía licencia alguna de armas, mientras que el Exhibit 14 y la declaración del Agte. Doval, probaron que el rifle vendido era capaz de disparar y causar grave daño corporal. Habida cuenta de ello, plantea que, contrario a lo argüido por el señor Solís, probó más allá de duda razonable su culpabilidad, como correctamente dictaminó el Jurado.

Para poder evaluar los reclamos del apelante, hemos estudiado minuciosamente la transcripción del juicio preparada para el caso. Al así hacerlo, podemos constatar que, tal cual correctamente expone el apelante, la prueba del Ministerio Público contiene las fallas señaladas por el apelante. No obstante, el examen detenido que hemos realizado de la transcripción de la prueba nos convence que todos los elementos constitutivos de los delitos imputados fueron probados más allá de duda razonable.

Mediante los distintos testimonios ofrecidos como prueba testifical por el Ministerio Público se probó que el apelante ofreció en venta por $3,300.00 a un agente encubierto un rifle, un cargador tipo tambor, 3 magacines sencillos y 50 balas.[8] Igualmente, quedó demostrado que: el 21 de febrero de 2022, este arribó junto con el señor Millet en un Mitsubishi 4 puertas color gris al estacionamiento de Burlington en Plaza las Américas a donde había llegado primero el agente; que se estacionaron al lado del vehículo del agente encubierto; que el acusado se baja del vehículo y lo saluda mientras que el señor Millet se bajó del auto, buscó un bulto en el baúl haciéndole entrega del mismo al agente encubierto;[9] que el agente

---

[8] Transcripción de la prueba oral, pág. 97, líneas 11-15; pág. 98, línea 9-15; pág. 107, líneas 14-22; pág. 108, líneas 4-10.

[9] *Íd., p*ág. 115, línea 14 a la pág. 117, línea 9. Véase también, la pág. 228, líneas 15-31.

encubierto intentó darle el dinero al señor Millet, más este le indicó que se lo entregara al apelante; que este coge el dinero y al pedírsele que lo cuente respondió "no, yo sé que contigo el ticket está completo";[10] y que luego de permanecer por varios minutos se retiraron del lugar de los hechos.[11] Según la prueba testifical, el bulto entregado contenía la mercancía que el apelante ofreció en venta, a la que se le tomaron fotos momentos después de la transacción en un lugar distinto al que fue entregada.[12] También, que el rifle y demás evidencia permaneció en manos del Agte. Pachecho, guardándose en una bóveda, y quien la llevó personalmente a realizarle la prueba de funcionamiento;[13] la que demostró que, en efecto, el rifle funcionaba y podía causar grave daño corporal.[14]

Como arriba señalamos, el apelante afirma que las inconsistencias y contradicciones que señala demuestran sin lugar a duda que la prueba del Ministerio Público falló en demostrar su culpabilidad más allá de duda razonable. Sus argumentos, sin embargo, no contemplan que el Jurado vio y oyó declarar a todos los testigos presentados por el Ministerio Público y presenció el extenso contrainterrogatorio al que fueron sometidos por la defensa. En el ejercicio de su discreción y como juzgadores de los hechos, el Jurado dirimió las contradicciones e inconsistencias surgidas durante los distintos testimonios, atribuyéndole el crédito que cada testimonio le mereció. Tras dicho ejercicio, y pese a estas, el Jurado emitió un veredicto unánime de culpabilidad. No hemos encontrado justificación alguna en el récord para intervenir con su determinación.[15] No se nos ha demostrado que en tal haber obrara influido por pasión, prejuicio o parcialidad o manifiesto error, por lo que tenemos que aceptar como verdad legal su fallo

---

[10] *Íd.* pág.117, líneas 11-25.
[11] *Íd.*, líneas 27-31.
[12] *Íd.*, pág. 47, línea 26 a la pág. 48, línea 9. Véase también la pág. 230, línea 24 a la pág. 231, línea 5.
[13] *Íd.*, pág. 231. Líneas 23-28; pág. 232, línea 30 a la pág. 233. Línea 7.
[14] *Íd.*, pág. 198, págs. 199 y 200.
[15] Más aún cuando algunas de las inconsistencias señaladas fueron explicadas en el turno de redirecto.

de convicción, el cual se sostiene por las declaraciones de los testigos y no puede afirmarse sea contrario a la totalidad de la prueba.

Esta determinación no pone fin al asunto ante nuestra consideración. Ello así, pues, además de impugnar el veredicto de culpabilidad emitido por el Jurado, ante nos el señor Solís expone que la sentencia que se le impuso cumplir viola la garantía constitución contra la doble exposición penal y la prohibición de penas crueles e inusitada, pues le ordena extinguir de forma consecutiva las penas de cárcel impuestas por violación al Artículo 6.02 y 6.09 de la Ley de Armas en lugar de solamente imponerle una sola de estas.

A los fines de atacar la pena que le ha sido impuesta, el apelante, basándose en lo resuelto en el caso de *Barrett v US* 607 US 128 (2026), reclama que el Art. 6.01 de la Ley de Armas- que dispone que todas las penas impuestas bajo el aludido estatuto serán cumplidas consecutivamente entre sí- es insuficiente en derecho para determinar si el Art. 6.09 del mismo estatuto absorbe al Art. 6.02 de aquel. Así pues, tras discutir la doctrina del concurso de leyes, expone que la relación entre los artículos 6.02 y 6.09 una de generalidad-especialidad. Ello así, pues el primero de estos aplica a cualquier arma y cualquier acto de venta, mientras el último aplica exclusivamente a una categoría concreta de armas y tipifica la portación, posesión o uso de estas.

El apelante argumenta que el arma objeto de los dos cargos en la causa de epígrafe es un rifle automático, precisamente el tipo de armas contemplado de forma específica y exclusiva por el art. 6.09. Añade, que el transferir dicho rifle sin licencia es una conducta sancionada en el mencionado artículo por lo que, de conformidad con el principio de especialidad, éste debe desplazar al Artículo 6.02 debiendo existir únicamente la convicción del tipo especial. En adición, reclama que la garantía contra la doble exposición prohíbe la acumulación de penas por la

misma conducta, por lo que las penas impuestas contravienen tal fundamento constitucional. Igual transgresión reclama al amparo de la prohibición de penas crueles e inusitadas.

El Ministerio Público, por su parte, defiende la pena impuesta por el foro primario al señalar que las disposiciones del Artículo 71 del Código Penal sobre el concurso de delitos solo aplican a penas impuestas por los delitos cometidos en violación al referido código y no a la Ley de Armas de Puerto Rico. Explica que, dicha ley especial, establece que todas las penas de reclusión que se impongan a su amparo deben, por disposición del propio estatuto, cumplirse consecutivamente entre sí y con aquellas impuestas según cualquier otra ley.

En cuanto a la decisión de *Barrett v. US*, citada por el apelante, el Ministerio Público expone que, en dicho caso, el Tribunal Supremo Federal determinó que no se podían imponer condenas separadas por un mismo acto cuando una disposición incorpora a la otra. Detalla que, para alcanzar tal conclusión, en la aludida jurisprudencia la Corte Suprema de los Estados Unidos evaluó: (1) si ambos estatutos imputados[16] definían la misma ofensa; por lo que era necesario determinar si para probar alguno de estos delitos se requiere una prueba de hechos que no se requiera para el otro y, de resultar que sí, los estatutos eran diferentes y concluía el análisis y (2) si existía una manifestación expresa del Congreso sobre su intención de que se impusiera más de un castigo.

Acto seguido, el Estado arguye que, contrario a lo alegado por el apelante al reclamar que para poder efectuarse la venta era necesaria la portación, hoy en día, la venta puede darse sin siquiera haber tenido el vendedor el arma en su posesión, pues puede ocurrir a través de otros medios como el correo o la mensajería. Así, riposta que estamos ante dos

---

[16] En el caso citado, al acusado se le sentenció, entre otras cosas, por un robo, uso de un arma de fuego durante el crimen y por causar una muerte durante ese acto, 18 U.S.C. sec. 1951, 18 U.S.C. 924(c)(1)(A)(i), 18 U.S.C. 924(j)(1).

delitos distintos, los que requieren hechos diferentes para poder probarse. A su vez, señala que, en el estatuto federal analizado en el caso de Barret v. US, distinto a nuestra Ley de Armas, la consecutividad de las penas no proviene de una disposición general aplicable a todo el Capítulo 44 que contempla los delitos relacionados con armas de fuego. En contrario, señala, el artículo 6.01 de la Ley de Armas es claro al disponer que tal consecutividad aplica a todas las violaciones de sus disposiciones.

Hemos analizado cuidadosamente la Ley de Armas- particularmente sus artículos 6.01, 6.02 y 6.09- frente a la decisión de *Barrett v. US*. Al hacerlo, encontramos que es correcto el señalamiento efectuado por el Estado en cuanto a que en el estatuto federal allí analizado "la consecutividad de las penas no proviene de una disposición general aplicable a todo el Capítulo 44 que contempla los delitos relacionados con armas de fuego". [17]

Tal cual hemos citado, el Artículo 6.01 de la Ley de Armas contiene un mandato claro que **todas** las penas de reclusión a ser impuestas bajo el aludido estatuto serán cumplidas **consecutivamente** entre sí y **consecutivamente** con aquellas impuestas bajo cualquier otra ley. Por tanto, y dado el inequívoco lenguaje establecido por la Asamblea Legislativa en su aprobación, resolvemos que lo resuelto en *Barrett v. US.*, *supra,* no es aplicable a la situación de hechos. Contrario a la situación planteada en la mencionada jurisprudencia, en nuestro ordenamiento jurídico nuestra Asamblea Legislativa claramente autorizó la imposición de

---

[17] Así queda claro en la Opinión cuando se expresa: (c) The text of §924 suggests strongly, perhaps conclusively, that Congress did not disavow Blockburger here. **Congress included Blockburger-surmounting language twice within subsection (c) itself: It mandated that a §924(c)(1) conviction must be "in addition to the punishment provided for" the predicate, and it also mandated that a conviction under §9245(c)(5)- for using or carrying armor piercing ammunition- must be "in addition to the punishment provided for" the predicate "or conviction under" §924.** The Court has elsewhere called such "in addition to" language "crystal clear" evidence of a legislature's intent to overcome Blockburger. **But Congress used no similar language with respect to the interplay between subsection (c) (1) and subsection (j)."**

penas consecutivas en cuanto y en relación con todas sus disposiciones. Por tanto, el segundo error señalado por el apelante tampoco fue cometido.

-IV-

Por los fundamentos antes esbozados, confirmamos el veredicto de culpabilidad emitido por el Jurado en contra del Sr. Jonathan Solís Pacheco. De la misma manera, confirmamos las penas de reclusión que le fueron impuestas.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones